## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

EARL KISTNER, currently deployed with the
United States Air Force and formerly residing
at the address,
37 Schmarbeck Avenue
Buffalo, New York  14212

        Plaintiff,

v.

THE CITY OF BUFFALO
c/o Corporation Counsel
65 Niagara Street, 1100 City Hall
Buffalo, New York  14202

BYRON LOCKWOOD, individually and in
his capacity as Police Commissioner of the
Buffalo Police Department,
68 Court Street
Buffalo, New York  14202

LAUREN McDERMOTT, individually and in
her capacity as a Buffalo Police Officer,
68 Court Street
Buffalo, New York  14202

JENNY VELEZ, individually and in her
capacity as a Buffalo Police Officer,
68 Court Street
Buffalo, New York  14202

KARL SCHULTZ, individually and in his
capacity as a Buffalo Police Officer,
68 Court Street
Buffalo, New York  14202

KYLE MORIARITY, individually and in his
capacity as a Buffalo Police Officer,
68 Court Street
Buffalo, New York  14202

        Defendants.

**COMPLAINT
AND JURY DEMAND**

Civil Action No.   21-cv-526

Plaintiff, Earl Kistner, by his attorneys, Rupp Baase Pfalzgraf Cunningham LLC, as and for his verified complaint against defendants, the City of Buffalo, Buffalo Police Commissioner Bryon Lockwood, and Police Officers Lauren McDermott, Jenny Velez, Karl Schulz, and Kyle Moriarity, alleges as follows:

## JURISDICTION

1.      This action is brought under 42 U.S.C. §§ 1983 and 1988, and under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

2.      This Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 1983.

3.      Plaintiff further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

4.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Western District of New York because the events forming the basis of plaintiff's verified complaint occurred in this District.

**PARTIES**

5.      At the time of the incidents that are the subject of this action, Earl Kistner was a citizen of the State of New York, County of Erie, formerly residing at 37 Schmarbeck Avenue, Buffalo, New York 14212.

6.      Defendant, the City of Buffalo, was and is a municipal corporation duly organized and existing under the laws of the State of New York and has a business address at City Hall, 65 Niagara Square, Buffalo, New York  14202.

7.      Defendant, the City of Buffalo, through its Common Council, City Counsel and their officers, agents, servants, employees, and/or their specialized units, promulgate, implement, review, and/or enforce, as policymakers, certain policies regarding the conduct and actions of police officers employed by the City of Buffalo, including defendants Lockwood, McDermott, Velez, Schultz, and Moriarity.

8.      Defendant, Byron Lockwood ("Lockwood"), was and is a resident of the County of Erie and State of New York, and is the Police Commissioner of the City of Buffalo Police Department.  Defendant Lockwood is employed by the City of Buffalo, and was, at all times hereinafter mentioned, acting within the scope of his employment and official capacity as the Police Commissioner of the City of Buffalo.

9.      As the Police Commissioner for the City of Buffalo, defendant Lockwood is responsible for the hiring, training, supervision, discipline, and conduct of the defendant officers, and is further responsible for setting, reviewing, and/or enforcing the policies and regulations of the Buffalo Police Department.  Defendant Lockwood also is responsible for ensuring that the City of Buffalo Police Officers obey the laws of the State of New York and the United States of America.

10.     Upon information and belief, at all relevant times, defendant Lockwood is/was a policymaker for the Buffalo Police Department in all matters that are alleged herein, and defendant Lockwood participated in the promulgation of policies and/or customs for the Buffalo Police Department by defendant the City of Buffalo.  Defendant Lockwood directly was responsible for policy and custom implementation (in whole or in part) at the City of Buffalo Police Department.  In addition, defendant Lockwood is being sued in their individual capacity for damages caused by his actions and/or conduct.

11.     Defendant, Lauren McDermott, was and is a resident of the County of Erie, and State of New York.  She was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned.  Defendant McDermott was acting within the scope of her employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, defendant McDermott is being sued in her individual capacity for damages caused by her actions and/or conduct.

12.     Defendant, Jenny Velez, was and is a resident of the County of Erie, and State of New York, and was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned.  Defendant Velez was acting within the scope of her employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, defendant Velez is being sued in her individual capacity for damages caused by her actions and/or conduct.

13.     Defendant, Karl Schultz, was and is a resident of the County of Erie, and State of New York, and was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned.  Defendant Schultz was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In

4

addition, defendant Schultz is being sued in his individual capacity for damages caused by his actions and/or conduct.

14.     Defendant, Kyle Moriarity, was and is a resident of the County of Erie, and State of New York, and was and is a Police Officer employed by the City of Buffalo at all times hereinafter mentioned.  Defendant Moriarity was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, defendant Moriarity is being sued in his individual capacity for damages caused by his actions and/or conduct.

15.     At all relevant times, defendants, either personally or through their employees, were acting under the color of law and/or in compliance with the official rules, regulations, laws, statutes, policies, customs, ordinances, usages and/or practices of the City of Buffalo.  Defendants' actions and conduct show that they did not, nor could they, reasonably rely upon any existing law.

## STATEMENT OF TIMELINESS

16.     On March 31, 2017, Plaintiff timely filed a Notice of Claim with the GMU § 53 Designee of the City of Buffalo, setting forth the facts underlying Plaintiff's claim against the Defendants.

17.     On June 27, 2017, Earl participated in a 50-h examination where he was examined by Corporation Counsel for the City of Buffalo.

18.     Thereafter, Plaintiff's previous attorney, James M. Ostrowski, Esq., engaged in settlement discussion with attorneys for the City of Buffalo to avoid protracted litigation.

19.     To date, no answer has been received by Plaintiff or his current attorneys at Rupp Baase Pfalzgraf Cunningham LLC, and no compensation has been offered by Defendants in response to his claim.

20.     On March 5, 2018, Earl Kistner enlisted in the United States Air Force. Mr. Kistner was accepted by the Air Force, and was deployed on March 9, 2018.

21.     New York Military Law § 308 tolls the applicable statute of limitations during the period of Earl Kistner's active military service; from March 5, 2018 to present as Mr. Kistner is still actively serving in the United States Air Force.

22.     Therefore, the statute of limitations has not expired because Earl Kistner is actively enlisted in the military.


**STATEMENT OF FACTS**

23.     At issue in this litigation is truly appalling conduct by the defendants on January 1, 2017.  The video described below shows Officers Schultz and Moriarity forcibly grabbing and shoving Earl Kistner as he tried to call 911 after his father, James Kistner, was hit by a police car driven by Officer McDermott.

24.     On the morning of January 1, 2017, Earl and his father observed that there were four Buffalo Police Officers outside 33 Schmarbeck.

25.     Earl's father first walked across and down Schmarbeck Avenue toward the parked police vehicles to see what was going on.

26.     Earl Kistner followed his father outside.

27.     Earl's father walked out into the street and approached the two marked police vehicles driven by the defendant officers.

28.     Officer McDermott then reversed the police vehicle and pulled forward towards Earl's father.  James Kistner, having little time to react, put his arms up to brace against the impact and closed his eyes.  The police vehicle struck Earl's father and caused him to be violently thrown to the pavement.

29.     Earl witnessed the accident.

30.     Earl immediately feared for his father's safety.

31.     Earl's father was knocked under the police vehicle.  He yelled to Earl to call 911 so that he could receive medical treatment because he was experiencing dizziness and serious and significant pain in his head.

32.     Earl reacted swiftly and ran back inside to get his phone to help his father. As you can see below, Mr. Kistner was standing on the sidewalk peacefully as his father was falsely arrested.



33.     Once the Officers forced Earl's father into the police car, they

immediately went after the plaintiff for no reason at all.  All the named defendants now agree

that Earl did not present a threat to any of the on-scene officers as they were falsely arresting his

father, and further agree that Earl was not breaking any laws that would have caused the officers

to forcibly detain the plaintiff.



34.     As the video clearly shows, the on-scene officers confiscated Earl's phone,

and refused to permit Earl to telephone an ambulance, which his father requested.

35.     The officers forcibly grabbed Mr. Kistner and pulled him to the middle of

the street.

36.     The officers confiscated Mr. Kistner's driver's license and surrounded

Earl preventing him from leaving.

8



37.     In a clear attempt to silence Earl Kistner and prevent him from calling an ambulance, the police violently accosted Mr. Kistner when they pushed him back and forth against his will while he tried to call 911.



38.     Earl Kistner had no ability to call 911 because the defendants violently assaulted him in the middle of the street.

9

39.     Defendants Schultz and Moriarity pushed Earl into the street and pushed him back and forth between them.

40.     Upon information and belief, defendants Schultz and Moriarity seized Earl's cell phone in an attempt to prevent any aid from coming to help his father.

41.     During and after the police shoved Earl back and forth, the police threatened and intimidated him to prevent him from obtaining aid for his father, who was injured after the collision caused his skull to bounce off the pavement.

42.     The Buffalo police should have investigated the collision, ticketing or at least evaluating the fault of the driving officer.

43.     Instead, the four police officers at the scene made a reflexive decision, later ratified by supervisors, and apparently consistent with police department customs and practices, to blame the victim.

44.     In a criminal conspiracy to suppress the truth about the collision with James Kistner, the police attempted to silence Earl Kistner by force, intimidation, and threat.

45.     The police officers present made sure to prevent any third parties from examining the scene and Mr. Kistner by radioing to cancel any 911 or ambulance calls to the location.  None of the officers present, including Officers Velez and McDermott, intervened to prevent these violations of Earl's Constitutionally-protected rights.  In fact, Officers Velez and McDermott watched and encouraged the violent actions by Officers Schultz and Moriarity against Earl Kistner.

46.     As a direct and proximate result of Defendants' conduct, Plaintiff has been compelled to retain the services of counsel to protect and enforce his rights, and therefore, Plaintiff has incurred and continues to incur attorneys' fees, expert fees, and costs for which

Plaintiff is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. § 1988.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT**
**Unlawful Seizure under 42 U.S.C. §1983**
**Against Officers McDermott, Velez, Schultz, and Moriarity**

47.     Earl incorporates the allegations contained in paragraphs 1 through 46 of this verified complaint as if fully set forth herein.

48.     Defendants are liable pursuant to 42 U.S.C. § 1983 for objectively unreasonably seizing Earl and his personal property, including his cell phone and driver's license, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

49.     Defendants deprived Earl of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

50.     Defendants confined Mr. Kistner when they pushed him back and forth, took his cell phone and driver's license, and then the officers surrounded Earl while his father, James Kistner, was falsely arrested after getting hit by defendants' police car on the morning of January 1, 2017.

51.     Mr. Kistner was aware of the confinement by defendants and repeatedly advised the officers that he did not consent to the confinement.

52.     The confinement by defendants was not otherwise privileged and was performed in violation of the Fourth and Fourteenth Amendments to the Constitution of the

United States.

53.     The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Mr. Kistner claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT
### Excessive Force under 42 U.S.C. § 1983
### Against Officers Moriarity and Schultz

54.     Earl incorporates the allegations contained in paragraphs 1 through 53 of this verified complaint as if fully set forth herein.

55.     Defendants forcibly detained Earl as he was trying to use his cell phone to call 911 for his injured father.

56.     Defendants touched and caused Earl to be touched in a harmful and offensive manner.

57.     Defendants' actions placed Earl in apprehension of imminent harmful and offensive bodily contact.

58.     Defendants did so without privilege or consent from Plaintiff.

59.     Defendants conduct under the circumstances was an excessive use of force on Earl which a reasonable officer in their position would not have used under the circumstances

60.     As a result of defendants' conduct, Plaintiff has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

61.     As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and humiliation, was deprived of his liberty, and was otherwise damaged and injured an amount to be determined at trial.

62.     The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiff claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

### THIRD CLAIM FOR RELIEF

**VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS**
**Failure to Intervene under 42 U.S.C. § 1983**
**<u>Against Officers McDermott and Velez</u>**

63.     Earl incorporates the allegations contained in paragraphs 1 through 62 of this verified complaint as if fully set forth herein.

64.     Law enforcement officers have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

65.     The defendants failed to take reasonable steps to prevent their fellow officers from engaging in the illegal acts alleged herein, though they were present at the scene of such violations and were capable of doing so.

66.     The defendants' actions violated Earl's Constitutionally-protected rights under the Fourth and Fourteenth Amendments.

67.     The defendants knew, or reasonably should have known, that their conduct violated Earl's clearly established Constitutionally-protected rights.

68.     The defendants acted with intent to violate, or with deliberate or reckless indifference to, Earl's clearly established rights under the Fourth and Fourteenth Amendment.

69.     Each police officer at the scene pushed and shoved Earl and failed to take any action to prevent the officers from seizing his cell phone.

70.     At all times relevant herein, the defendants were acting under the color of state or federal law.

71.     As a direct and proximate result of the foregoing, Earl was damaged and injured in an amount to be determined at trial.

72.     The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Earl claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

### FOURTH CLAIM FOR RELIEF

**VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS**
**Conspiracy to Violate Earl's Constitutional Rights under 42 U.S.C. § 1983**
**Against Officers McDermott, Velez, Moriarity, and Schultz**

73.     Earl incorporates the allegations contained in paragraphs 1 through 72 of this verified complaint as if fully set forth herein.

74.     By and through the actions described above, defendants, acting under the color of state law, conspired to deprive Earl of his constitutional rights, in violation of 42 U.S.C. § 1983 and his Fourth and Fourteenth Amendment as guaranteed by the United States Constitution.

75.     Defendants conspired amongst themselves to illegally detain Earl in order to prevent an ambulance from providing aid to his father after he was hit by a police car despite being in need of medical attention.

14

76.     As a direct and proximate result of the foregoing, Earl was damaged and injured in an amount to be determined at trial.

77.     The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Earl claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

### FIFTH CLAIM FOR RELIEF

**VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS**
**First Amendment Retaliation under 42 U.S.C. § 1983**
**Against Officers McDermott, Velez, Moriarity, and Schultz**

78.     Earl incorporates the allegations contained in paragraphs 1 through 77 of this verified complaint as if fully set forth herein.

79.     Earl stated his intention to call an ambulance that could provide adequate medical attention to his injured father.

80.     Officer Schultz, joined by the other three on-scene officers, threatened to, and did, confiscate Earl's cell phone and cancelled the ambulance that Earl called to treat his father.

81.     Upon information and belief, the on-scene officers cancelled the ambulance in a further attempt to cover up their misconduct and avoid having an investigation of Officer McDermott's negligent collision with Earl's father, James Kistner.

82.     In retaliation for Earl's speech, the officers violently accosted Earl's father, confiscated his cell phone, shoved him back and forth between the officers, and then seized his driver's license and detained Earl who was surrounded by three City of Buffalo police officers who continued to threaten and harass Earl and his father.

15

83.     The officers detained Earl without reason to believe Earl committed a crime or behaved in such a way that would cause a reasonable officer to fear for his or her safety.

84.     Earl's speech was noncommercial and was protected by the First Amendment.

85.     Earl's speech did not violate any law.

86.     Defendants' conduct and actions, including illegally and violently seizing and detaining Earl Kistner and his personal property, was motivated and/or substantially caused by Earl's speech by virtue of his stated intention to call an ambulance for his injured father.

87.     The conduct and actions of the Defendants were done intentionally, maliciously, with deliberate indifference, and/or with reckless disregard for the natural and probable consequences of their acts.

88.     Defendants' conduct and actions were done without lawful justification or reason and caused Earl injury.

89.     As a direct and proximate result of the foregoing, Earl was damaged and injured in an amount to be determined at trial.

90.     The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Earl claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.


**SIXTH CLAIM FOR RELIEF**

**VIOLATION OF THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS**
**Negligent Hiring/Failure to Supervise and Train under 42 U.S.C. §1983**
**Against Police Commissioner Byron Lockwood**

91.     Earl incorporates the allegations contained in paragraphs 1 through 90 of

this verified complaint as if fully set forth herein.

92.     As alleged in his father's lawsuit, *James C. Kistner v. The City of Buffalo, et al.*, (Civil No. 18-CV-00402) (WDNY), prior to January 1, 2017, defendants developed and maintained policies, customs, and practices exhibiting deliberate indifference to the constitutional rights of persons in Buffalo, which caused the violation of Mr. Kistner's rights.

93.     As part of James Kistner's lawsuit, current City of Buffalo Police Commissioner Byron Lockwood was deposed and asked whether the on-scene officers violated City of Buffalo Police Department's Manual of Procedures by violently grabbing Earl and confiscating his cell phone.  Commissioner Lockwood agreed that the on-scene officers violated the City of Buffalo Police Department's Manual of Procedures.

94.     Commissioner Lockwood was asked during his deposition whether he would discipline the on-scene officers for their clear violation of the City of Buffalo Police Department's Manual of Procedures.  Lockwood stated that he would go back to his office and review the file materials to determine if discipline should be assessed against the on-scene officers.

95.     Upon information and belief, to date, Commissioner Lockwood has not disciplined any of the on-scene officers for their antics as seen in the surveillance video that captured the incidents, including the violent pushing and shoving of Earl Kistner who was merely trying to call for medical assistance for his injured father.

96.     It is the policy, custom, or both of defendants the City of Buffalo and Commissioner Lockwood to inadequately supervise and train its police officers, including defendants McDermott, Velez, Schultz, and Moriarty, thereby failing to prevent and remedy the constitutional violations against Earl.

97.     Upon information and belief, defendants the City of Buffalo and Lockwood continue to maintain a policy, custom, or practice of retaliating against individuals who lawfully object to police actions or behave in a way that officers perceive as disrespectful.

98.     The policies, customs, and practices of defendants the City of Buffalo and Commissioner Lockwood demonstrate a deliberate indifference to the constitutional rights of persons within the City of Buffalo and caused the violation of Earl's rights alleged herein.

99.     As a direct and proximate result of defendant' policies, customs, and practices, Mr. Kistner was damaged and injured at an amount to be determined at trial.

100.     The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Earl claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## SEVENTH CLAIM FOR RELIEF

### MUNICIPAL LIABILITY
### *Monell* Claim Against the City of Buffalo under 42 U.S.C. § 1983

101.     Earl incorporates the allegations contained in paragraphs 1 through 100 of this verified complaint as if fully set forth herein.

102.     The City of Buffalo directly caused the constitutional violations suffered by Plaintiff and is liable for the damages suffered by Plaintiff as a result of the conduct of the defendant officers.  The conduct of the defendant officers was a direct consequence of policies and practices of the City of Buffalo existing at the time of the incidents which has not been corrected and, upon information and belief, continues to present day.

103.     At all times relevant to this complaint the City of Buffalo, acting through its Police Department, had in effect policies, practices, and customs that condoned and fostered

18

the unconstitutional conduct of the individual defendants, and were a direct and proximate cause of the damages and injuries complained of herein.

104.    The events of January 1, 2017 were part of an ongoing conspiracy to chill Earl, his father, and other similarly situated individuals' constitutionally protected expression of free speech and other protected expression.

105.    At all relevant times, the City of Buffalo, through its municipal officers, including but not limited to Commissioner Lockwood, were aware that Officers McDermott, Velez, Moriarity, and Schultz had violated the City of Buffalo Police Department's Manual of Procedures regarding their handling of the incidents on January 1, 2017, yet the City of Buffalo has refused to discipline these officers for the very clear civil rights violations that were captured on the surveillance footage.

106.    Upon information and belief, the City of Buffalo's refusal to discipline these officers for the clear civil rights violations captured on the surveillance footage described above is consistent with the City's policy and custom, existing both before and after the incidents, to inadequately supervise its officers.

107.    The City of Buffalo consistently and repeatedly has failed to properly screen its officers, and has continued to retain officers, including the individual officers named as defendants in this action, who have a history of inappropriate and unlawful acts, thereby causing further harm to the citizens of this great city.

108.    In 2017, it was found that 94% of all complaints against City of Buffalo police officers resulted in no disciplinary action against the officers involved.

109.    Upon information and belief, that 2017 statistic is consistent with the staggering lack of discipline and accountability for current City of Buffalo police officers.

110.    Rather than disciplining its officers, the City of Buffalo has a policy and custom of promoting officers who have a history of violating the civil rights of citizens in the City of Buffalo.

111.    For instance, after the incidents described above, and after a Federal complaint was filed against her for her role in the incidents, the City of Buffalo promoted Officer Velez to Lieutenant in C-District, thereby further perpetuating the policy and custom of the City of Buffalo to retaliate against citizens who speak out against abuses by the City's police officers.

112.    By promoting officers who have a history of violating the civil rights of citizens, the City of Buffalo has demonstrated a deliberate indifference to the rights and privileges of the people its Police Department has sworn to protect.

113.    As a direct and proximate result of the Defendants' policies, customs, and practices, Earl was damaged and injured in an amount to be determined at trial.

114.    The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Earl claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## EIGHTH CLAIM FOR RELIEF

### ASSAULT IN VIOLATION OF NEW YORK STATE LAW
### Against Officers Moriarity, Schultz, and the City of Buffalo

115.    Earl incorporates the allegations contained in paragraphs 1 through 114 of this verified complaint as if fully set forth herein.

116.    Defendants' actions placed Earl in apprehension of imminent harmful and offensive bodily contact.

117.    As a result of defendants' conduct, Earl has suffered physical pain and

20

mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

118.     The conduct of Officers Moriarity and Schultz occurred while they were on duty and in uniform, in and during the scope of their duties and functions as City of Buffalo police officers, and while they were acting as an agent, officer, servant, and employee of Defendant City of Buffalo.  As a result, Defendant City of Buffalo is liable to Earl pursuant to the state common law doctrine of respondeat superior.

119.     As a direct and proximate result of the foregoing, Earl was damaged and injured in an amount to be determined at trial.

120.     The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Earl claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

**NINTH CLAIM FOR RELIEF**

**BATTERY IN VIOLATION OF NEW YORK STATE LAW**
**Against Officers Moriarity, Schultz, and the City of Buffalo**

121.     Earl incorporates the allegations contained in paragraphs 1 through 120 of this verified complaint as if fully set forth herein.

122.     Defendants touched and caused Earl to be touched in a harmful and offensive manner.

123.     Defendants did so without privilege or consent from Earl.

124.     As a result of defendants' conduct, Earl has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

125.     The conduct of Officers Moriarity and Schultz occurred while they were on duty and in uniform, in and during the scope of their duties and functions as City of Buffalo

police officers, and while they were acting as an agent, officer, servant, and employee of

Defendant City of Buffalo.  As a result, Defendant City of Buffalo is liable to Earl pursuant to

the state common law doctrine of respondeat superior.

126.    As a direct and proximate result of the foregoing, Earl was damaged and

injured in an amount to be determined at trial.

127.    The aforesaid conduct by the Defendants was willful, malicious,

oppressive, and/or reckless and was of such a nature that Earl claims punitive damages against

each of them in an amount commensurate with the wrongful acts alleged herein.


## TENTH CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### IN VIOLATION OF NEW YORK STATE LAW
### Against all Defendants

128.    Earl incorporates the allegations contained in paragraphs 1 through 127 of

this verified complaint as if fully set forth herein.

129.    Defendants conduct described above was extreme and outrageous and

exceeded all reasonable bounds of decency.

130.    Defendants' conduct was intentional and done for the sole purpose of

causing severe emotional distress to Mr. Kistner and arose from defendants' abuse of their

position of power.

131.    As a result of defendants' conduct, Mr. Kistner has severe emotional

distress and physical and mental injury together with embarrassment, humiliation, shock, fright,

and loss of freedom.

132.    The conduct of the on-scene officers occurred while they were on duty and

in uniform, in and during the scope of their duties and functions as City of Buffalo police officers, and while they were acting as an agent, officer, servant, and employee of Defendant City of Buffalo.  As a result, Defendant City of Buffalo is liable to Earl pursuant to the state common law doctrine of respondeat superior.

133.    As a direct and proximate result of the foregoing, Earl was damaged and injured in an amount to be determined at trial.

134.    The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Earl claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## ELEVENTH CLAIM FOR RELIEF

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### IN VIOLAION OF NEW YORK STATE LAW
### <u>Against all Defendants</u>

135.    Mr. Kistner incorporates the allegations contained in paragraphs 1 through 134 of this verified complaint as if fully set forth herein.

136.    Defendants conduct, in detaining Earl, seizing his personal property, and cancelling an ambulance called by Earl to treat his injured father, was careless and negligent as to the emotional health of Earl and caused severe emotional distress to him.

137.    The acts and conduct of Defendants was the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

138.    The conduct of the on-scene officers occurred while they were on duty and in uniform, in and during the scope of their duties and functions as City of Buffalo police

23

officers, and while they were acting as an agent, officer, servant, and employee of Defendant City of Buffalo.  As a result, Defendant City of Buffalo is liable to Earl pursuant to the state common law doctrine of respondeat superior.

139.   As a result of the foregoing, Plaintiff was deprived of his liberty, was subjected to serious physical and emotional pain and suffering and was otherwise damaged and injured.

140.   As a direct and proximate result of the foregoing, Earl was damaged and injured in an amount to be determined at trial.

141.   The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Earl claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## DEMAND FOR JURY TRIAL

142.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

Plaintiff, Earl Kistner, prays for relief and demands judgment as follows:

143.   That Earl be awarded compensatory damages against all defendants in an amount to be determined at trial;

144.   That Earl be awarded punitive damages against all defendants in an amounted to be determined at trial;

145.    That this Court, pursuant to 42 U.S.C. §1988, issue an order awarding

plaintiff reasonable attorneys' fees, together with the costs of this action against all defendants;

and

146.    That this Court award such other further relief, together with any other

legal or equitable relief, or both, as the Court deems just and proper.


Dated:    April 15, 2021
          Buffalo, New York

                        **RUPP BAASE PFALZGRAF CUNNINGHAM** LLC
                        *Attorneys for Plaintiff*


                        _____ *s/ R. Anthony Rupp III* _____
                        R. Anthony Rupp III, Esq.
                        Chad A. Davenport, Esq.
                        1600 Liberty Building
                        Buffalo, New York  14202
                        Phone:  (716) 854-3400
                        rupp@ruppbaase.com
                        davenport@ruppbaase.com